IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:16cr23

SYLVESTER R. BOOKER,
         Petitioner.

## MEMORANDUM OPINION

Sylvester R. Booker, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 Motion to vacate, set aside, or correct his sentence. ("§ 2255 Motion," ECF No. 105.) Booker contends that he is entitled to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One | "Trial counsel failed to object to the drug amount of 10 to 30 kilograms as listed in the [S]tatement of [F]acts even though [Booker] insisted that he was not responsible for more than three kilograms." (ECF No. 105-1, at 3.) |
| Claim Two | "[Trial] counsel failed to object to [Booker's] enhancement for [his] role in the offense, failing to argue that [Booker] was merely a buy-seller of heroin in the Richmond area." (*Id.*) |
| Claim Three | Trial counsel "kept insisting that [Booker] would receive a life sentence if he did not agree to plead guilty to the charges[] and admit to the [S]tatement of [F]acts." (*Id.* at 3–4.) |
| Claim Four | "[T]rial counsel . . . failed to raise objecti[on]s and legal arguments to the two[-]level enhancement given to [Booker] for obstruction of justice, when there was no evidence that [Booker] was attempting to conceal or destroy evidence to hinder the prosecution[] or influence his sentence." (*Id.* at 4.) |
| Claim Five | Trial counsel failed "to explain the consequence of pleading guilty or the right to contest the validity of the forfeiture order." (*Id.*) |

---

[1] The Court employs the pagination assigned by CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions and the record.

  Claim Six    Trial counsel "failed to object to the consent order of the forfeiture and h[e] fail[ed] to investigate [Booker's] ability to pay the sum of $2,250,000." (*Id.*)

In response, the Government argues that Booker's claims are meritless. (ECF No. 107.) Booker filed a reply. (ECF No. 110.) Booker also filed a Motion to Amend,[2] which, liberally construed, arguably sets forth a proposed seventh claim alleging that the Court erred in applying the advisory sentencing guidelines. (ECF No. 145.)

Claims One through Six will be DISMISSED because Booker fails to demonstrate that he received ineffective assistance of counsel. The § 2255 Motion, (ECF No. 105), will be DENIED. The Motion to Amend, (ECF No. 145), will be DENIED as futile because, *inter alia*, challenges to a court's application of the advisory guidelines are not cognizable under § 2255.

## I. PROCEDURAL HISTORY

On February 16, 2016, a federal grand jury indicted Booker for conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(i). (ECF No. 14, at 1.)

On May 5, 2016, Booker entered into a written Statement of Facts with the Government. (ECF No. 32.) Booker stipulated that had the matter gone to trial, the Government would have proved the following facts, which he agreed were "true and correct," beyond a reasonable doubt:

> From in or about January 2012, and continuing up to January 20, 2016, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendant, SYLVESTER R. BOOKER, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with others to distribute, and possess with the intent to distribute, one kilogram or more of heroin, a Schedule I controlled substance, this amount of heroin being reasonably foreseeable to the defendant, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).
> Beginning in or about January 2012, BOOKER was conspiring with several others to distribute heroin in Richmond, in the Eastern District of Virginia. As part

---

[2] Booker titles the document as a "Motion to Supplement the Record," however, the Court notes that Booker seeks to amend his original filing and construes the motion accordingly.

2

> of the conspiracy, BOOKER traveled to New York to purchase kilogram quantities of heroin in order to bring back to the Richmond, Virginia area for distribution. On many of these occasions, BOOKER recruited lower members of the conspiracy to transport the heroin on his behalf.
>
> On at least four occasions in 2015, law enforcement made controlled purchases of heroin from Julius Edwards, a member of BOOKER's conspiracy. These purchases were made on July 13, July 17, September 18, and September 30, all in 2015. During this time period, Edwards was being supplied heroin by BOOKER.
>
> Throughout the month of October 2015, agents of the Drug Enforcement Administration ("DEA") obtained a court-ordered wiretap on Edwards's cellular telephone. Edwards was intercepted on numerous occasions speaking with BOOKER[] and negotiating heroin transactions. Likewise, during the months of November and December 2015, and up until January 20, 2016, the DEA obtained a court-ordered wiretap on BOOKER's cellular telephone. The DEA intercepted numerous calls that implicated BOOKER and others in a heroin trafficking conspiracy; federal and state law enforcement conducted surveillance of BOOKER's various residences and corroborated his involvement in the conspiracy to distribute heroin.
>
> In January 2016, several of BOOKER's calls were intercepted that showed that he was meeting his source of supply in New York to purchase an additional two kilograms or more of heroin. BOOKER was under surveillance at the time and was seen visiting his source of supply's apartment. After leaving the apartment in New York, law enforcement executed a lawful search warrant and found three kilograms of heroin stored at that apartment. The source of supply confirmed, against his penal interest, that BOOKER had agreed to purchase two of the three kilograms found at the residence.
>
> The parties stipulate for sentencing purposes the amount of heroin reasonably foreseeable to the defendant is at least ten kilograms, but no more than thirty kilograms.

(*Id.* at 1–2 (paragraph numbers omitted).) At the end of the Statement of Facts, Booker signed the document with the following verification:

> I have consulted with my attorney regarding this Statement of Facts and committed the acts described herein knowingly, intentionally, willfully and without legal justification or excuse, with the specific intent to do that which the law forbids, and not by mistake, accident, or any other reason. I knowingly and voluntarily agree that each of the above-recited facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt.

(*Id.* at 3.)

On that same day, May 5, 2016, Booker appeared before a Magistrate Judge for a plea hearing. (*See* ECF No. 73, at 1–2.) The Magistrate Judge placed Booker under oath, and Booker acknowledged that he was subject to prosecution for perjury if he testified falsely. (*Id.* at 4.) Booker pleaded guilty to Conspiracy to Distribute Heroin. (*Id.* at 22.)

The Magistrate Judge found that Booker's plea was knowing, voluntary, and supported by an independent basis in fact, and he accepted Booker's guilty plea. (*Id.*) Then, the Magistrate Judge explained to Booker that, while he had accepted Booker's guilty plea, it remained for the District Court to find him guilty and impose his sentence. (*Id.* at 23–24.)

Following Booker's plea hearing, a probation officer prepared a Presentence Investigation Report ("PSR"). (ECF No. 46.) Booker received a Total Offense Level of 39 and a Criminal History Category of III, resulting in an advisory guidelines range of 324 to 405 months of imprisonment. (*Id.* ¶¶ 82–83.)

On September 30, 2016, Booker entered a Consent Order of Forfeiture with the Government. (ECF No. 55.) Booker stipulated that he would forfeit $2,250,000, which represented the proceeds of his offense of conviction. (*Id.* at 1.) At the end of the Order of Forfeiture, Booker signed the document with the following verification:

> The parties stipulate and agree that the aforementioned assets constitute, or are derived from, proceeds obtained, directly or indirectly, as the result of the offense; or are property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such[] offense; and are subject to forfeiture pursuant to 21 U.S.C. § 853. The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, and announcement of the forfeiture at sentencing, and consent to the entry of this order.

(*Id.* at 3.)

On November 3, 2016, Booker appeared before the District Court for sentencing. (*See* ECF No. 74.) The Court found Booker guilty based on his prior plea before the Magistrate Judge. (ECF No. 61, at 1.) Neither party objected to the PSR. (ECF No. 74, at 3–4.)

At sentencing, the Government called lead investigator Christopher O'Connor, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") to testify about his investigation of Booker. (*Id.* at 4–14.) TFO O'Connor testified that he investigated Booker for four years, which he described as an unusually long period of time. (*Id.* at 5.) TFO O'Connor stated that the investigation was challenging because Booker's "drug trafficking organization" primarily consisted of "family members and long-time associates." (*Id.*) Although investigators arrested at least five individuals involved in the conspiracy and approached them about cooperating, they all refused to cooperate against Booker. (*Id.* at 49–58.)

TFO O'Connor further explained that the investigation took a long time because it involved a Title III wiretap on Booker. (*Id.* at 6.) Each time that authorities built a case against someone close to Booker and arrested them, Booker changed his phone number, and the process had to begin again. (*Id.*) Further complicating matters, Booker frequently moved between six different residences that he either owned or indirectly controlled, which were all utilized in the drug conspiracy. (*Id.* at 7.)

After authorities arrested Booker's source of heroin in New York, he cooperated with the DEA. (*Id.* at 10.) The source confirmed that Booker traveled to New York over a period of years and routinely picked up "multiple kilogram[]" shipments of heroin. (*Id.*) Booker utilized many methods to transport his drugs from New York to Virginia for distribution. (*Id.* at 7.) He used other co-conspirators to carry his heroin by bus, or in personal vehicles and rented U–Hauls. (*Id.*) On one occasion, the heroin came to Virginia in a hot dog cart. (*Id.*) Further, Booker used a

5

variety of couriers, ranging from a man in his sixties, to several young women in their teens and twenties. (*Id.* at 8.)

When asked how much heroin he believed Booker had trafficked for distribution, given a range between 10 and 30 kilograms, TFO O'Connor said that it "was definitely 30 [kilograms]." (*Id.* at 9.) Broken down into a retail unit of sale, or approximately one tenth of a gram, TFO O'Connor testified that Booker was responsible for at least 300,000 individual doses of heroin being sold. (*Id.* at 11.) Some of the known samples of heroin attributable to Booker had a high purity level and would likely need to be cut with an adulterant before final sale. (*Id.*) Accordingly, TFO O'Connor noted that the actual number of street-level doses that Booker was responsible for was likely "well north" of 300,000. (*Id.*)

The Government recommended a sentence within the guidelines range of 324 to 405 months of imprisonment. (*Id.* at 21.) Booker's attorney asked for a downward departure based largely on the fact that Booker had not demonstrated a propensity for violence, despite being deeply involved in a business that is often fraught with extreme violence. (*Id.* at 17–19.)

Before pronouncing the sentence, the Court gave Booker a chance to address the Court. (*Id.* at 21–22.) Booker gave a lengthy statement recounting the difficulties that he faced in his life. (*Id.* at 22–31.) He then said that he would make "no excuses" for his behavior, that he had made a "wrong decision" out of "desperation," and that he regretted it because he had "hurt a lot of people." (*Id.* at 29–30.)

The Court determined that there was not "sufficient mitigation under the[] facts and circumstances" to warrant a downward departure from the guidelines. (*Id.* at 31.) The Court sentenced Booker to 324 months of incarceration, the low end of his guidelines. (*Id.* at 32.)

Booker noted an appeal, (ECF No. 63), and the United States Court of Appeals for the Fourth Circuit appointed Booker a new attorney to represent him on his appeal, (ECF No. 67). Appellate counsel submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), indicating that there were no meritorious grounds for appeal, but questioning whether:

> (1) the district court erred in concluding that Booker was responsible for 10 to 30 kilograms of heroin; (2) the district court erred in imposing sentencing enhancements for Booker's leadership role in the offense and for obstruction of justice; (3) Booker received ineffective assistance of counsel; (4) the district court violated Fed. R. Crim. P. 32(i); and (5) there was a substantial connection between Booker's criminal activities and the property subject to forfeiture.

*United States v. Booker*, 716 F. App'x 172, 173 (4th Cir. 2018). The Fourth Circuit affirmed Booker's conviction and sentence. *Id.* at 173–75. Booker's current § 2255 Motion followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show both that counsel's representation was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice prong requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, a court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

7

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 [plea hearing] is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

### III. ANALYSIS

#### A. *Claim One*

In Claim One, Booker alleges that "[t]rial counsel failed to object to the drug amount of 10 to 30 kilograms as listed in the [S]tatement of [F]acts even though [Booker] insisted that he was not responsible for more than three kilograms." (ECF No. 105-1, at 3.)

Booker remains bound by his sworn statements at the Rule 11 plea hearing. *See United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005). Booker's current claims to the contrary are self-serving and conclusory, and they do not constitute the sort of "extraordinary circumstances" that would require the Court to consider Booker's prior sworn statements at the Rule 11 plea hearing to be anything other than truthful. *Id.* Consequently, the sworn statements that Booker made at his plea hearing are "conclusively established." *Id.*

At the plea hearing, Booker acknowledged the Statement of Facts. (ECF No. 73, at 19.) Booker said that he reviewed it with his attorney, understood everything in it, and had signed it. (*Id.* at 19–20.) When the Magistrate Judge asked Booker if the Statement of Facts "fairly and accurately represent[ed] the crime [he] committed," Booker said, "Yes, sir." (*Id.* at 20.) Booker told the Magistrate Judge that that no one had threatened him to get him to plead guilty and that he was satisfied with the work that his attorney had done for him. (*Id.* at 10, 16.) Booker further

8

said that he was pleading guilty because he was in fact guilty, and he conceded that the Government could prove its case against him.³ (*Id.* at 19.)

Given the foregoing exchange, Booker fails to show that counsel was deficient, much less that he was prejudiced in any way. Accordingly, Claim One will be DISMISSED.

### B. Claim Two

In Claim Two, Booker alleges that "[trial] counsel failed to object to [Booker's] enhancement for [his] role in the offense, failing to argue that [Booker] was merely a buy-seller of heroin in the Richmond area." (ECF No. 105-1, at 3.)

Based upon the Statement of Facts that Booker stipulated to, and information that was provided by TFO O'Connor, the probation officer concluded in the PSR that Booker was an organizer or leader of his criminal conspiracy. (ECF No. 46 ¶¶ 12–16, 18.) Summarizing Booker's extensive role in the conspiracy, the PSR stated that:

> The defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. As noted in the Statement of Facts, the defendant recruited lower members of the conspiracy to transport the heroin on his behalf. Additionally, as summarized in the offense conduct section, the defendant directed members to obtain and distribute heroin. He also provided instruction on how to distribute heroin and instructed a related case to provide an additional gram of heroin to another member due to shorting him. He also used a related case to inform a coconspirator to sell 20 ounces of heroin that was not located by law enforcement, and then instructed the related case to advise the coconspirator to cease taking $600 for each ounce of heroin he/she sold.

---

³ As the Fourth Circuit found on direct appeal, Booker's statements at his plea hearing "undercut" his assertion that he was coerced into signing the Statement of Facts, in which he stipulated that he was responsible for between 10 to 30 kilograms of heroin. *United States v. Booker*, 716 F. App'x 172, 173–74 (4th Cir. 2018). Booker is barred from relitigating this issue. *See United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) ("[A] § 2255 petition cannot be used to relitigate questions . . . considered on direct appeal."); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a petitioner cannot "recast" issues that were rejected on direct appeal as grounds for collateral review).

9

(*Id.* ¶ 18 (emphasis omitted).) Because of his status as an organizer or leader in his conspiracy, Booker's Total Offense level was increased by four levels. (*Id.* ¶¶ 25, 31.)

Booker remains bound by his sworn statements at the Rule 11 hearing. *See Lemaster*, 403 F.3d at 221–22. Booker specifically acknowledged the Statement of Facts as a fair and accurate representation of the crimes that he had committed. (ECF No. 73, at 20.) Booker admitted to playing a prominent role in an interstate drug trafficking network that operated for years and regularly moved multi-kilogram shipments of heroin from New York to Richmond for distribution. (ECF No. 32, at 1–2.) In addition to being the primary point of contact for the source of supply in New York and arranging the large-scale transportation of heroin, Booker also "recruited lower members of the conspiracy to transport the heroin on his behalf." (*Id.*)

Following such admissions, it would have been frivolous for trial counsel to object to Booker's sentencing enhancement for his role as an organizer or leader in the offence, especially in light of the testimony of TFO O'Connor, who provided additional details on the innerworkings of Booker's drug distribution network, including his extensive use of couriers. The record before the Court demonstrates that Booker was much more than a mere buyer and seller of heroin. He was certainly a leader, if not the sole leader, of a major heroin distribution conspiracy.[4]

Consequently, Booker fails to show that counsel was deficient or that counsel's performance prejudiced him in any way. Accordingly, Claim Two will be DISMISSED.

### C. Claim Three

Booker next claims that trial counsel "kept insisting that [Booker] would receive a life sentence if he did not agree to plead guilty to the charges[] and admit to the [S]tatement of [F]acts."

---

[4] In affirming Booker's sentence on direct appeal, the Fourth Circuit held that "the record adequately demonstrates that Booker was a high-level member of the conspiracy who consistently directed others on the distribution of heroin." *Booker*, 716 F. App'x at 174. This issue will not be reexamined. *See Linder*, 552 F.3d at 397; *Boeckenhaupt*, 537 F.2d at 1183.

(ECF No. 105-1, at 3–4.)

Assuming, *arguendo*, that trial counsel did advise Booker in the manner described above, Booker fails to show that counsel's advice was deficient. In 1989, Booker was convicted in state court for Possession of Cocaine with Intent to Distribute and Possession of Heroin with Intent to Distribute. (ECF No. 46 ¶ 36.) In 1999, Booker was convicted in this Court of Conspiracy to Distribute Cocaine. (*Id.* ¶ 38.) Had the Government certified Booker's prior felony drug convictions, which it was free to do, Booker would have faced a mandatory life term.[5] *See* 21 U.S.C. § 841(b)(1)(A) (West 2016). Given the strength of the Government's case against Booker, it was prudent for trial counsel to strongly encourage Booker to plead guilty in this instance and thus limit the mandatory minimum time that he might face.

Further, as indicated above, Booker told the Magistrate Judge at his plea hearing that no one had threatened him to get him to plead guilty and that he was satisfied with the work that his attorney had done to defend him. (ECF No. 73, at 10, 16). Booker also explicitly stated that he understood that any statements his attorney made to him regarding his possible sentence were only predictions and that the ultimate determination of what sentence he would receive would be up to the District Court, which would base its decision on a variety of factors. (*Id.* at 11–16.) The Magistrate Judge then reviewed those factors in detail. (*Id.*)

---

[5] In 2018, Congress passed the First Step Act ("FSA"), which, among other things, reduced the mandatory minimum term of imprisonment under 21 U.S.C. § 841(b)(1)(A) for offenders that had two or more prior felony drug offenses from life to twenty-five years. FSA, Pub. L. No. 115–391, § 401(a)(2)(ii), 132 Stat. 5194, 5220. This portion of the FSA, however, is not retroactively applicable to offenders like Booker, who were sentenced prior to the enactment of the FSA. *See* FSA, § 401(C), 132 Stat. at 5221; *see also United States v. Birdine*, 962 F.3d 1032, 1034 n.3 (8th Cir. 2020) (observing that FSA modifications to 21 U.S.C. § 841(b)(1)(A) were "not retroactive and appl[y] only to defendants sentenced after December 21, 2018"); *United States v. Taylor*, No. 21-11689, 2021 WL 5321846, at *2 (11th Cir. Nov. 16, 2021) (same).

Booker remains bound by these sworn statements, *see Lemaster*, 403 F.3d at 221–22, and, in any event, Booker fails to demonstrate that counsel was deficient, much less that he suffered prejudice. Accordingly, Claim Three will be DISMISSED.

### D. *Claim Four*

In Claim Four, Booker opines that "trial counsel also failed to raise objecti[on]s and legal arguments to the two[-]level enhancement given to [Booker] for obstruction of justice, when there was no evidence that [Booker] was attempting to conceal or destroy evidence to hinder the prosecution[] or influence his sentence." (ECF No. 105-1, at 4.)

Booker received an obstruction of justice enhancement because, while he was incarcerated, he directed his co-conspirators to retrieve twenty (20) ounces of heroin that law enforcement had missed when they searched one of his residences and sell it. (ECF No. 46 ¶ 19.) The Fourth Circuit has previously found that an obstruction of justice enhancement is proper under virtually identical circumstances. *See United States v. Prosise*, 367 F. App'x 423, 431 (4th Cir. 2010) (rejecting argument that obstruction of justice enhancement was improper where jailed defendant reached out to family members and instructed them to recover and sell cocaine base that law enforcement had missed during the search of a vehicle). It would have been frivolous for trial counsel to object to the obstruction of justice enhancement in this instance.[6]

Booker fails to demonstrate that counsel was deficient, much less that he was prejudiced in any way. Thus, Claim Four will be DISMISSED.

---

[6] This conclusion should come as no surprise to Booker. In affirming his sentence, the Fourth Circuit found that Booker engaged in obstructive conduct by directing his co-conspirators to retrieve the heroin that law enforcement had missed and sell it. *Booker*, 716 F. App'x at 174. This issue will not be revisited. *See Linder*, 552 F.3d at 397; *Boeckenhaupt*, 537 F.2d at 1183.

### *E. Claim Five*

In Claim Five, Booker alleges that trial counsel "fail[ed] to explain [to him] the consequence of pleading guilty . . . ." (ECF No. 105-1, at 4.)[7]

At the plea hearing, Booker stated that he reviewed the charge against him with his attorney. (ECF No. 73, at 7–9.) Booker stated that he had a sufficient opportunity to talk to his attorney about the charge and any possible defenses. (*Id.* at 10.) Booker confirmed that he knew that he could receive a sentence between ten years and life if convicted. (*Id.* at 8–9.) Booker indicated that he knew that he could also receive a fine of up to ten million dollars. (*Id.*) Booker further indicated that he knew that the Government would seek the forfeiture of his assets if he was convicted. (*Id.*) Booker also confirmed that he discussed the sentencing guidelines with his attorney and that he understood that any representations that anyone had made to him about his possible sentence were merely predictions. (*Id.* at 11–15.) Booker confirmed that no one had threatened him to get him to plead guilty, (*id.* at 10), and that he was satisfied with the work that his attorney had done to defend him, (*id.* at 16). Booker remains bound by these sworn statements. *See Lemaster*, 403 F.3d at 221–22.

Booker fails to specify what more he believes his attorney should have done to explain to him the consequences of his guilty plea. Thus, Booker's allegations are insufficient to establish a claim of ineffective assistance of counsel. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

---

[7] Booker also claims that trial counsel failed to explain to him his "right to contest the validity of the forfeiture order." (*Id.*) The Court will address this aspect of Booker's allegation in conjunction with Claim 6, *infra*, which also relates to the Consent Order of Forfeiture that Booker signed.

Once again, Booker fails to demonstrate that counsel was deficient or that he was prejudiced in any way.[8] Accordingly, Claim Five will be DISMISSED.

### F. *Claim Six*

In Claim Six, Booker says that trial counsel "failed to object to the consent order of forfeiture" and "to investigate [Booker's] ability to pay the sum of $2,250,000." (ECF No. 105-1, at 4.) Booker maintains that if his attorney had fully investigated his financial status, he would have known that Booker was unable to pay the stipulated forfeiture amount. (*Id.* at 6.) Booker further posits that if counsel had presented this information to the Court, "in all probability the [C]ourt would not have imposed that amount." (*Id.*) Booker's argument is entirely conclusory and his rank speculation as to what the Court might have done is wholly insufficient to carry his burden. *Sanders*, 373 U.S. at 19.

It is beyond debate that a sufficient nexus existed between Booker's criminal conspiracy and the property that was subject to forfeiture.[9] Moreover, Booker's argument completely ignores the fact that he agreed to all of the salient facts in the Statement of Facts, which he swore to at his plea hearing, and to all of the relevant figures, which he stipulated to and signed, in the Consent Order for Forfeiture. Setting aside for a moment that it would have been both disingenuous and frivolous for counsel and Booker to reach an agreement with the Government only to come to

---

[8] Even if the Court were to assume, *arguendo*, that trial counsel was deficient in advising Booker about the consequences of his guilty plea, Claim Five would nevertheless still be dismissed because of the Magistrate Judge's "careful explanation of the potential severity of the sentence," which precludes a finding of prejudice. *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995).

[9] On direct appeal, the Fourth Circuit expressly considered this issue. *Booker*, 716 F. App'x at 175. In affirming his sentence, the Fourth Circuit stated that "Booker's signed consent order of forfeiture, as well as the facts provided during his allocution, sufficiently connect the forfeited property to his criminal activity, and we therefore discern no impropriety in the district court's forfeiture order." *Id.* (citation omitted). That decision is not susceptible to challenge here. *See Linder*, 552 F.3d at 397; *Boeckenhaupt*, 537 F.2d at 1183.

14

court and object to the entry of that agreement, Booker's position suffers from another fatal flaw.

Booker fails to explain, and the Court fails to discern, how his ability to pay the stipulated amount is even relevant to the analysis. *See United States v. Bennett*, 986 F.3d 389, 397–400 (4th Cir. 2021). "Standing alone, the fact that [a criminal defendant] d[oes] not have sufficient assets to satisfy the forfeiture judgment is insufficient to render the judgment unconstitutional." *Id.* at 400. On this record, it would have been frivolous for counsel to challenge the Consent Order of Forfeiture on the grounds that Booker could ill-afford the amount. Booker's vague and conclusory allegations fail to establish that counsel was deficient, much less that he suffered any prejudice.

Turning now to Booker's contention that he did not know that he had a "right to contest the validity of the forfeiture order," (*see* ECF No. 105-1, at 4), the record before the Court seems to belie Booker's self-serving allegation. However, the Court need not decide whether counsel was deficient in this regard because, in any event, Booker fails to demonstrate that he was prejudiced. *Strickland*, 466 U.S. at 697 (observing that it is not necessary to determine whether counsel was deficient if a claim is readily dismissed for lack of prejudice).

Simply put, Booker fails to identify a single method by which he could have successfully contested the issue of forfeiture. Booker does not contend that there was some mathematical error in the computation of the amount to be forfeited. Nor does he argue that he was not legally obligated to forfeit some amount of his assets to the Government. Rather, the only grounds that he offers for challenging the issue of forfeiture is that he could not afford to pay the large sum that he stipulated to in his agreement with the Government. However, as discussed above, Booker's ability, or lack thereof, to pay that amount is not even a factor that the Court had to consider. Consequently, Booker fails to demonstrate prejudice, and the Court need not decide whether

counsel was deficient in this regard.[10]

Accordingly, Claim Six will be DISMISSED.

### G. *Motion to Amend*

The United States Court of Appeals for the Fourth Circuit has given lower courts the following guidance for addressing motions to amend § 2255 motions:

> Rule 12 of the Rules Governing Section 2255 Proceedings states, "If no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules . . . and may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate." The Rules Governing Section 2255 do not specify a procedure for amending motions. Therefore[,] courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion.

*United States v. Pittman*, 209 F.3d 314, 316–17 (4th Cir. 2000) (citing *Rogers v. United States*, 180 F.3d 349, 352 n.3 (1st Cir. 1999); *United States v. Duffus*, 174 F.3d 333, 336 (3d Cir. 1999)).

Amendment at this juncture would be futile. *See Pittman*, 208 F.3d at 317 (noting that "futility of amendment" is a legitimate basis for denying a motion to amend). In his Motion to Amend, Booker arguably sets forth a proposed seventh claim alleging that the Court erred in

---

[10] It is difficult to comprehend how Booker would not have known that he could contest the issue of forfeiture. The Indictment indicates that the Government would seek the forfeiture of Booker's real and personal property in a "sum of at least $10,000,000." (ECF No. 14, at 2.) Booker had a copy of the Indictment and reviewed it with his attorney. (ECF No. 73, at 7.) At the plea hearing, it was clear that counsel had spoken with the Government regarding the issue of forfeiture and that they were going to "try to come to an agreement." (*Id.* at 8–9.) The Magistrate Judge confirmed that Booker knew that the Government could "seek any assets that they believe are drug-related" if he and his attorney were unable to reach an agreement with the Government. (*Id.* at 9.) Booker subsequently entered a Consent Order of Forfeiture with the Government in which he stipulated that he would forfeit $2,250,000. (ECF No. 55, at 1.) This represents an almost eighty (80) percent reduction from the ten-million-dollar figure that the Government initially sought. Further, Fed. R. Crim. P. 32.2, which was referenced four times in the Consent Order of Forfeiture that Booker signed, (*see* ECF No. 55, at 2–3), provides that any party can contest the issue of forfeiture and request an evidentiary hearing. Fed. R. Crim P. 32.2(b)(1)(B). On these facts, Booker's position strains credibility. Indeed, it appears that counsel negotiated with the Government to great effect and was able to significantly reduce the amount that Booker forfeited.

applying the advisory sentencing guidelines. (ECF No. 145, at 1.) Because Booker's guidelines were advisory, however, he cannot challenge the court's application of the guidelines through a § 2255 motion. *See Lester v. Flournoy*, 909 F.3d 708, 715 (4th Cir. 2018) (citing *United States v. Foote*, 784 F.3d 931, 932 (4th Cir. 2015)).

Accordingly, the Motion to Amend, (ECF No. 145), will be DENIED.[11]

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion, (ECF No. 105), and the Motion to Amend, (ECF No. 145), will be DENIED. Booker's claims and the action will be DISMISSED. A certificate of appealability will be DENIED.[12]

An appropriate Order shall accompany this Memorandum Opinion.

Date: 10 March 2022
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[11] To the extent Booker merely desired to draw the Court's attention to recent developments in case law, the Court is aware of the case cited by Booker and has considered it accordingly.

[12] An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Booker has not met this standard.